UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE MICHAEL ANTHONY,

                Plaintiff,                Case No. 1:04-CV-67

v.                                                HON. DAVID W. McKEAGUE

VILLAGE OF ELK RAPIDS and
MICHAEL MILES, in his individual
and official capacity,

                Defendants.
_____/

## OPINION OF THE COURT
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In his two-count complaint, plaintiff George Michael Anthony, a former employee of the Elk Rapids Police Department, asserts claims against defendants Village of Elk Rapids and its Police Chief Michael Miles. Count I sets forth a federal civil rights claim under 42 U.S.C. § 1983 for infringement of plaintiff's First Amendment right of free speech. Count II is a claim under Michigan's Elliott-Larsen Civil Rights Act alleging sexual harassment and retaliatory discharge. Defendants have moved for summary judgment on both claims against both defendants. On March 7, 2005, the Court conducted a hearing on the motion, granting the motion in part and requiring supplemental briefing on certain issues. The supplemental briefing is complete and the Court now addresses the outstanding issues.

## I. FIRST AMENDMENT CLAIM

### A. *Factual Background*

Plaintiff's employment with the Elk Rapids Police Department was terminated in November 2002. The November 7, 2002 termination letter from Village Manager Robert L. Peterson does not state a reason for plaintiff's termination. It was issued after a November 4, 2002 meeting of the Village Council, at which the Council considered and approved Police Chief Miles' recommendation that plaintiff be discharged. By letter from the Village Manager dated October 23, 2002, plaintiff had been given notice of the meeting and of his opportunity to respond to charges that he had engaged in acts of dishonesty. Specifically, the letter advised that plaintiff was suspected of (1) having submitted an incomplete employment application, omitting material information relating to his past employment history; and (2) having falsely reported to the Antrim County Sheriff Department that Chief Miles had threatened him. The letter further advised that such acts of dishonesty could be grounds for discharge. Plaintiff did not appear at the meeting and did not otherwise respond to the charged dishonesty.[1] The record of the Village Council's meeting indicates

---

[1] As justification for his nonattendance, plaintiff relies on a letter from his treating physician, Patrick H. Friedli, M.D., to the Village Manager, dated September 3, 2002. The letter indicates that plaintiff was unable to return to work indefinitely, until stress and depression resulting from harassment by the police chief were resolved. The letter predated the notice of the Village Council meeting by some seven weeks. Neither the letter nor any other medical evidence of record speaks specifically to plaintiff's condition at the time of the Village Council meeting on November 4, 2002.

Plaintiff has also presented a note from Dr. Friedli, dated September 27, 2002, stating that plaintiff was "since August until present not able to attend any meetings regarding employment and harassment issues." It appears from the record of the meeting that the contents of this note or a similar note were communicated to the Village Council. The Council elected to proceed with the meeting despite plaintiff's absence, because the period of disability prescribed in the note had expired several weeks earlier and because plaintiff had not otherwise advised, in response to notice of the meeting, that he was unable or did not intend to attend the meeting. Further, plaintiff has offered no explanation for his failure to submit at least a written response to the

2

that the Council's decision was based on the two cited acts of dishonesty. The Council unanimously approved Chief Miles' recommendation.

In count I of his complaint, plaintiff alleges his termination was motivated by retaliatory animus. Plaintiff contends he had made complaints about Police Chief Miles to a Village Council member, Robert Orschel, and the Village Clerk, Barbara Manley, in the Fall of 2001 and Winter of 2002. Specifically, plaintiff had reported that he twice detected the smell of intoxicants on Chief Miles' breath while at work; that Chief Miles, upon learning that plaintiff was of Syrian and Lebanese descent, had referred to him as a "sand-nigger"; that he had observed Chief Miles removing three bottles of whiskey from the evidence locker; and that Chief Miles had made him uncomfortable by watching him use the shower and toilet facilities in the department locker room.

Thereafter, plaintiff alleges, Chief Miles engaged in an intensifying campaign of retaliatory harassment, which culminated in the recommendation that plaintiff be discharged. As a result of stress caused by harassment, plaintiff contends he experienced anxiety and chest pains that required hospitalization and a medical leave of absence from March 1 to July 3, 2002. During the medical leave, plaintiff says he twice requested a meeting with the Village Manager to discuss his relationship with Chief Miles. No such meeting was scheduled, however, reportedly because of the pendency of plaintiff's worker's compensation claim against the Village. When he returned to work, plaintiff contends the harassment continued. It appears that during the medical leave, Chief Miles had learned about allegations made by plaintiff to other officers and Village staff. On July 10, 2002,

---

charged acts of dishonesty.
 The record reflects that the meeting was attended by a representative of the Police Officers Labor Union, Ken Nash, who was present to ensure that plaintiff's rights were observed. Mr. Nash did not object to any of the proceedings or otherwise participate in any way.

3

he demanded that plaintiff explain in writing within one week why he had disseminated allegations to the effect that Chief Miles was an alcoholic, a racist, a physical and verbal abuser; has a gambling problem; and does not want Antrim County Sheriff deputies in the Village of Elk Rapids.[2] Shortly thereafter, just before his second medical leave of absence in August, plaintiff recalls that Chief Miles confronted him and told him that turning him into the Council for removing the liquor was "the biggest mistake of my life." Plaintiff dep. p. 104.

On August 9, 2002, the last day plaintiff worked, there was another exchange with Chief Miles that resulted in a panic attack requiring medical attention and disabling plaintiff from work indefinitely. It appears Chief Miles advised plaintiff that another officer had complained about and blamed plaintiff for unsanitary conditions in the police station restroom. Plaintiff viewed this as harassment. Plaintiff experienced a panic attack that triggered his report to the Antrim County Sheriff Department that Chief Miles had threatened him. This charge and plaintiff's fearfulness were the basis, apparently, for plaintiff's request for a Sheriff deputy's escort to the police station so that he could change clothes and sign-off for the day. When the request for a Sheriff deputy escort was denied, plaintiff apparently sought and obtained the accompaniment of Village Council President Robert Bassett. According to Chief Miles, this false charge that he threatened plaintiff was the second of two acts of dishonesty that warranted his termination.

The first act of dishonesty was plaintiff's undisputed failure to list his 1999 employment with the Montrose Township Police Department on his employment application. Chief Miles learned of this omission by sheer happenstance in September 2002. Upon making further inquiry, he also

---

[2] Chief Miles' assertion that plaintiff never responded to this demand is not disputed. Copies of Chief Miles' letter were provided to Council members in August 2002, however, apprising them of tensions between the two men.

learned that plaintiff's employment as a part-time probationary police officer in Montrose Township had been terminated for unsatisfactory performance. Chief Miles has testified that he would not have hired plaintiff had he known of plaintiff's unsuccessful experience in Montrose Township. Miles dep. pp. 168-69. Plaintiff contends that he omitted this information from his application because there was insufficient room on the form, but there is no evidence that he communicated this explanation to the Council before he was terminated.

Notwithstanding the facial legitimacy of the reasons for his termination, which remain substantially unrefuted by plaintiff, he insists that the termination decision was actually motivated by Chief Miles' determination to retaliate against him for having exposed instances of his misconduct to the Village Council. Such retaliation is said to be an impermissible infringement of his First Amendment freedom of speech.

### B. *Matter of Public Concern*

The standards governing plaintiff's First Amendment claim are summarized in *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004). To establish a *prima facie* case of First Amendment retaliation under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in constitutionally protected activity; (2) that he was subjected to adverse action or deprived of some benefit; and (3) that the protected speech was a "substantial" or "motivating factor" in the adverse action. *Id.* at 588. Speech is protected if it addresses a matter of public concern. Whether the speech at issue involves a matter of public concern is a question of law for the Court, although there may be factual questions regarding the nature and context of the communication. *Id.* at 589. "Speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government." *Id.* at 590. The entire speech

does not have to address matters of public concern to be protected, as long as some portion of the speech does so. *Id.* at 589. "Mixed speech" cases, *i.e.*, those in which the subject speech arises in the context of a personnel dispute or grievance, but also touches upon matters of public concern, present difficult challenges. *Id*. at 590.

Here, the speech for which plaintiff was allegedly retaliated against is "mixed." Plaintiff's complaints about Chief Miles' verbal abuse and name-calling smack of a personal dispute or employee grievance. Yet, to the extent the reported name-calling evidences bias against plaintiff because of his ethnic background, a "matter inherently of public concern" is implicated – even if plaintiff's complaint grew out of an individual employment concern. *See Perry v. McGinnis*, 209 F.3d 597, 608-09 (6th Cir. 2000). Moreover, plaintiff's reports of the Chief having smelled of alcohol while on duty and having taken liquor from the evidence locker for personal purposes are matters appropriately reported to the Village Council to enable oversight of police department operations. The Court is thus satisfied, at this stage, that plaintiff has adduced sufficient evidence to create a genuine fact issue concerning the protected speech element of his *prima facie* case.

**C.** *Adverse Action*

As to the second element of plaintiff's claim, there is no dispute that plaintiff's discharge represents sufficiently adverse action to support his First Amendment retaliation claim against the Village of Elk Rapids. Because Chief Miles did not actually discharge plaintiff, however, the First Amendment claim against him in his individual capacity must be premised on some other adverse action. The complaint alleges that defendant Miles engaged in a "retaliatory campaign of intimidation, threats, harassment, increased sexual harassment, [and] arbitrary disciplinary actions." Complaint ¶ 3. The allegation of arbitrary disciplinary actions is supported by evidence of three

letters of discipline received by plaintiff from Chief Miles immediately after returning to work from his first leave of absence. The most serious of these is a letter of reprimand, dated July 9, 2002, for having failed to properly complete an investigation of a reported theft several months earlier. The second letter, also dated July 9, critiques a police report prepared by plaintiff and directs him to prepare a new one properly. The third letter is the July 10 letter from Chief Miles demanding an explanation for plaintiff's dissemination of allegations of misconduct by the Chief. Although the timing of the letters, viewed from plaintiff's perspective, was unfortunate, there is otherwise no reason to believe, on the present record, that the letters were arbitrary, inaccurate or unwarranted. Nor did they result in any substantive change in the conditions of his employment, such as a suspension, demotion or loss of pay or benefits. Standing alone, the letters of discipline, even if shown to be retaliatory, can hardly be deemed to represent adverse action resulting in injury of the sort that would chill a person of ordinary firmness in the exercise of his First Amendment rights. *See Bloch v. Ribar*, 156 F.3d 673, 679-81 (6th Cir. 1998).

In support of his charge that Chief Miles engaged in a campaign of intimidation and harassment after learning of plaintiff's protected speech, plaintiff relies exclusively on his own deposition testimony. He cites various incidents of inappropriate physical contact initiated by Chief Miles, mostly in the police station. Yet, while the precise dates of these incidents are not identified, plaintiff's own testimony and argument indicate they predated his first leave of absence in March 2002. None of the incidents occurred during the brief period of time plaintiff had returned to work (July 3 to August 9, 2002) after Chief Miles had learned of plaintiff's allegations about him. Hence, none of the alleged physical acts of intimidation and harassment can have been retaliatory adverse actions.

7

In assessing defendants' motion for summary judgment, the Court is obliged to view the record in the light most favorable to plaintiff. Yet, plaintiff cannot merely rest on his pleadings. He must come forward with *facts* which could support a reasonable jury finding in his favor. The Court's scrutiny of the record has failed to disclose facts supporting plaintiff's allegation that defendant Miles, after he learned of plaintiff's protected speech, subjected him to adverse action causing injury that would chill a person of ordinary firmness.[3] This complete failure of evidence on an essential element of plaintiff's First Amendment retaliation claim against defendant Miles necessarily renders all other facts immaterial and compels award of summary judgment to defendant Miles on this claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-35 (1986).

**D.** *Substantial or Motivating Factor*

The final element of plaintiff's *prima facie* case against the Village requires a showing that plaintiff's complaints regarding matters of public concern were a substantial or motivating factor behind the decision to discharge him. To meet this requirement, plaintiff must point to specific, nonconclusory allegations reasonably linking his discharge to his protected speech. *Rogers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). If he meets this burden, the Village may show, by a

---

[3] The Court recognizes that embarrassment, humiliation and emotional distress resulting from adverse action, and chilling one of ordinary firmness in his or her exercise of First Amendment rights, may constitute injury enough to support a First Amendment retaliation claim. *Bloch*, 156 F.3d at 679. The Court is also aware of the opinion of Karen Noelle Clark, Ph.D., based on a July 2004 evaluation of plaintiff, that plaintiff's symptoms of emotional distress and depression are causally related to his prior employment relationship with Chief Miles. Yet, even Dr. Clark has not suggested that plaintiff experienced emotional distress specifically as a result of retaliatory adverse actions taken by Chief Miles after he learned of plaintiff's complaints to the Council. Nor is the notion even plausible that the cited letters of discipline from Chief Miles, all facially legitimate, could result in injury chilling one of ordinary firmness in the exercise of his rights. It is more reasonable to conclude that plaintiff's emotional distress stemmed from other causes and that any contribution attributable to the letters of discipline was negligible.

preponderance of the evidence, that plaintiff would have been discharged anyway, even in the absence of the protected speech. *Id.*

Plaintiff points to the July 10, 2002 letter from Chief Miles, demanding a written explanation of plaintiff's complaints about him, as evidence that Chief Miles had become aware of his reports to the Village Council and was upset about them. Plaintiff also points to Chief Miles' "worst day of my life" remark as evidence of his retaliatory animus. Further, plaintiff cites Miles' own deposition testimony to the effect that, in addition to the above mentioned acts of dishonesty, he "believed" he had also based his recommendation to discharge plaintiff on *other* false statements made by plaintiff, alleging that he was a racist and had been drunk on duty. Miles dep. pp. 113-14. Indeed, the Council resolution embodying the termination decision refers to plaintiff's "falsification of the job application and *other* false and misleading statements with relation to his employment." (Emphasis added.)

In response, defendants maintain that retaliatory animus, even if Chief Miles harbored any at all, played no role in the Village Council's decision. The record of the November 4, 2002 Village Council meeting confirms, they argue, that Chief Miles recommended and the Council approved plaintiff's termination solely because of the two identified acts of dishonesty: the false employment application, and the August 9 false allegation that Chief Miles had threatened physical harm to plaintiff. Indeed, the transcribed record of the Village Council proceedings supports their position, demonstrating that the "other false and misleading statements" relied on by the Council relate to the August 9 incident. In fact, Chief Miles appears to have taken pains to ensure that his recommendation was understood to be based exclusively on the two cited acts, even though he had "many other concerns about this officer." Council meeting tr. at p. 4. The transcribed record of the

9

meeting does not support defendant Miles' apparently erroneous "belief," two years after the fact, that his recommendation had also been based in part on plaintiff's false allegations of racial bias and drinking while on duty. Nor is there *any* other *evidence* that plaintiff's earlier complaints about Chief Miles were a factor in the Council's decision. To the extent that plaintiff's claim depends on Miles' erroneous deposition testimony, it is supported by nothing more than a mere scintilla of evidence, which is insufficient to forestall summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To the extent retaliatory animus arguably played any undisclosed role in Chief Miles' thought processes, the Village insists it cannot be held liable therefor, as the Council's decision was based solely on legitimate and independently sufficient grounds for discharge. Plaintiff maintains that the Council was on notice both of plaintiff's earlier complaints about Chief Miles and of Miles' displeasure about them. In the face of the Council's knowledge of the prior tensions between the two men, plaintiff contends the Village cannot avoid liability simply by claiming ignorance.

Yet, plaintiff has not disputed the Council's findings that his employment application was materially false, by virtue of his knowing omission of material adverse information. Neither has he even attempted to rebut evidence that he was discharged from employment with the Montrose Township Police Department because of unsatisfactory performance, including disobeying orders of superiors, violating departmental policies, and conduct detrimental to the morale of the department. Nor has plaintiff refuted the charge that his August 9 allegation that Chief Miles had threatened him, a charge communicated to another law enforcement agency, was false. In other words, plaintiff has not challenged the legitimacy and adequacy of the Council's given reasons for discharging him. Rather, his argument seems to be that the Council would not have taken action had

Chief Miles not recommended action, and Chief Miles would not have recommended action apart from his retaliatory motive for doing so.

The First Amendment claim is brought under 42 U.S.C. § 1983. Unlike an employment discrimination claim brought under Title VII, for instance, *respondeat superior* liability is not available under § 1983. *Holloway v. Brush*, 220 F.3d 767, 772-73 (6th Cir. 2000). To impose § 1983 liability on the Village of Elk Rapids for actions taken by Chief Miles, plaintiff must show either that Chief Miles was the final decisionmaker for the Village on the matter of plaintiff's discharge or that he otherwise acted pursuant to official government policy or custom. *Id.* It is undisputed that only the Village Council, not Chief Miles, had authority to discharge plaintiff. Chief Miles was not the final decisionmaker. Further, there is no evidence to support a finding that Chief Miles' allegedly retaliatory actions were taken pursuant to official policy or custom and can therefore be imputed to the Village. The factual basis for municipal liability under § 1983 is therefore lacking. Under these circumstances, the Village cannot be held liable for approving Chief Miles' recommendation, even if the recommendation was partly motivated by an undisclosed unlawful purpose.

Hence, the Court finds, as a matter of law, that there is no evidentiary basis for finding a causal nexus between plaintiff's protected speech and the Council's eventual decision to terminate his employment. Plaintiff having thus failed to adduce evidence supporting this essential element of his *prima facie* case, it follows that the Village, too, is entitled to summary judgment on plaintiff's count I claim for infringement of his First Amendment freedom of speech.

**II. SEXUAL HARASSMENT CLAIM**

In count II of his complaint, plaintiff alleges, under Michigan law, that defendant Miles, through various acts of sexual harassment, created a hostile work environment, causing plaintiff to suffer a mental breakdown, for which the Village is liable in *respondeat superior*. Plaintiff also alleges that his discharge was motivated by defendant Miles' desire to retaliate against him for having complained to the Council about the sexual harassment. After hearing arguments on March 7, 2005, the Court awarded partial summary judgment to the defendants on this claim. First, plaintiff acknowledged that he could not proceed against defendant Miles individually on the hostile work environment claim, *see Jager v. Nationwide Truck Brokers, Inc.*, 252 Mich. App. 464, 484 (2002), *lv. denied,* 468 Mich. 884 (2003); *Elezovic v. Ford Motor Co.*, 259 Mich. App. 187, 189 (2003), *lv. granted,* 470 Mich. 892 (2004), and could not proceed against defendant Miles on the retaliatory discharge claim, because he was not the employer and was not the firing authority. To this extent, defendant Miles was granted partial summary judgment.

Second, plaintiff also acknowledged there is no evidence that he complained to the Village Council or Village Manager or other member of "higher management" about Miles' acts of *sexual* harassment, as opposed to other forms of harassment, before he was discharged.[4] Accordingly, there

---

[4] During plaintiff's first medical leave of absence, he was examined by psychologist Mark M. Garner, Ph.D., for evaluation of his fitness to return to work. Dr. Garner's report indicates that plaintiff complained of stress resultant from "interpersonal difficulties" with Chief Miles. Yet, plaintiff desired to return to work and was cleared to do so. After commencement of plaintiff's second leave of absence, Village Manager Peterson received notice from Dr. Friedli that plaintiff was disabled from work "due to medical problems caused by harassment at work." Peterson undertook an investigation of this "harassment," but was unable to obtain a statement from plaintiff, in writing or even by telephone. He did obtain statements from Chief Miles and three other officers, all of whom denied knowledge of any harassment. The harassment complaint was thus found to be unsubstantiated and the investigation was closed.

being no evidence that the Village was aware that any alleged sexual harassment was occurring, the Court awarded partial summary judgment to the Village on plaintiff's hostile work environment theory. *See Elezovic v. Ford Motor Co.*, 259 Mich. App. 187, 193-95 (2003).[5]

These two rulings, the correctness of which plaintiff has conceded in his supplemental brief, left two questions unresolved: (1) whether Chief Miles can be held individually liable for adverse actions taken against plaintiff, other than the recommendation to discharge, in retaliation for plaintiff's complaints of sexual harassment; and (2) whether the Village can be held liable in *respondeat superior* for having approved Chief Miles' recommendation to discharge, if there is evidence that the recommendation was motivated in part by an undisclosed desire to retaliate against plaintiff for having complained of sexual harassment. Having reviewed the parties' supplemental briefing together with the entire record presented, the Court concludes, for the reasons that follow, that both questions must be answered in the negative.

### A. *Retaliation Claim against Miles*

Addressing the first question, plaintiff correctly argues, on the strength of *Rymal v. Baergen*,

---

[5] Under Michigan law, "an employer may avoid liability for a claim of sexual harassment if it does not have actual or constructive notice of the alleged harassment." *Elezovic*, 259 Mich. App. at 193. "Notice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Id.* at 195, quoting *Chambers v. Trettco, Inc.*, 463 Mich. 297, 319 (2000). For the reasons discussed above, even considering the totality of the circumstances in the light most favorable to plaintiff, the Village of Elk Rapids, assessed by an objective standard, cannot be deemed to have had actual or constructive notice of any alleged sexual harassment. Plaintiff did not complain about the alleged sexual harassment. Plaintiff thus finds himself in the same position as the plaintiff in *Elezovic*, whose complaints of harassment and hostile environment, without reference to *sexual* harassment, were deemed insufficient to establish actual or constructive notice. 259 Mich. App. at 195-96. There simply is no basis on the present record for finding that the Village should have been aware of a substantial probability that Chief Miles was sexually harassing plaintiff and therefore no basis for vicarious liability.

262 Mich. App. 274, 296-99 (2004), that although defendant Miles cannot be held individually liable under the Elliott-Larsen Civil Rights Act for creating a sexually discriminatory or harassing hostile work environment, he can be held liable for retaliating against a person who has made a hostile work environment charge or lodged such a complaint under the Act. *See* M.C.L. § 37.2701(a). Yet, the first element of plaintiff's *prima facie* case on such a claim requires proof that he engaged in protected activity, *i.e.,* that he expressly opposed or took an overt stand against sexual discrimination or harassment constituting a violation of the Act or participated in an investigation of such a charged violation. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989); *Comiskey v. Automotive Industry Action Group*, 40 F.Supp.2d 877, 897-98 (E.D. Mich. 1999). A vague charge of discrimination is insufficient. *Booker*, 879 F.2d at 1313; *Comiskey*, 40 F.Supp.2d at 898.

Plaintiff has admitted there is no evidence that he complained to higher management or even participated in an investigation about defendant Miles' alleged sexually harassing conduct. Plaintiff's deposition testimony indicates he reported to Robert Orschel and Barbara Manley his discomfort upon observing Chief Miles watch him use the shower and toilet facilities in the department locker room. Plaintiff dep. p. 93.[6] At best, this is a vague charge of harassment and is clearly insufficient. Moreover, the incident, as described by plaintiff, is of ambiguous significance. Rather than evidencing sexual harassment, it appears just as likely that Chief Miles' observations were motivated by other officers' complaints about unsanitary conditions in the locker room facilities. Plaintiff's report of this incident simply cannot support a reasonable finding that he engaged in protected

---

[6] This testimony is partially contradicted by plaintiff's own deposition testimony that he never reported the shower incident to anyone. Plaintiff dep. p. 48.

activity.[7]

Hence, it is clear that plaintiff cannot satisfy the first element of a *prima facie* showing that any adverse action taken by Chief Miles was in retaliation for his having engaged in activity protected under the Elliott-Larsen Civil Rights Act.[8]  Accordingly, to the extent plaintiff's count II claim sets forth a retaliation claim against defendant Miles in his individual capacity, defendant Miles is entitled to summary judgment.

### B. *Retaliation Claim against Village*

The above analysis also dictates the answer to the second unresolved question, whether the Village can be held liable in *respondeat superior* for approving Miles' allegedly retaliatory recommendation to discharge him.  If plaintiff did not complain of sexual harassment, defendant Miles can hardly have known of such a complaint and can hardly have been motivated by an undisclosed desire to retaliate against plaintiff for making such a complaint.  There simply is no evidence to support the claim that plaintiff's discharge was motivated by a desire to retaliate against him for complaining about sexual harassment.  Neither is there evidence impugning the legitimacy

---

[7] Furthermore, even if plaintiff's reporting of this incident were deemed to represent a sexual harassment complaint, there is no evidence that Chief Miles knew of the complaint and therefore no evidence that he was motivated by it to retaliate against plaintiff.

[8] The Court recognizes that the Michigan Court of Appeals has held that a formal or express complaint about sexual harassment or discrimination is not necessarily required.  In *Rymal v. Baergen,* evidence that an employee was discharged because of conduct "raising the specter of a discrimination complaint" was held to be sufficient to create a triable fact issue.  262 Mich. App. at 315-16.  The present facts, however, evidence retaliation, if at all, not based upon a complaint of sexual harassment, but based on complaints of other misconduct by defendant Miles, discussed in part I of this opinion.  In contrast with *Rymal*, where a female employee had complained of demeaning conduct, harassment and discrimination by a male boss, creating an inference of sex discrimination, the misconduct by defendant Miles that plaintiff Anthony was known to have complained of did not implicate sexual harassment or discrimination.

and truthfulness of the stated reasons for which the Council decided to discharge plaintiff. Moreover, as indicated above, in the absence of factual support for a finding that the Village had notice of any alleged sexual harassment, the Village cannot be held vicariously liable for Miles' actions. *Elezovic*, 259 Mich. App. at 193. The Village is therefore also entitled to judgment as a matter of law on plaintiff's count II claim against it.

### III. CONCLUSION

Defendants' motion for summary judgment requires plaintiff to come forward with *evidence* substantiating the allegations of his complaint and raising a triable issue of fact under the governing legal standards. Plaintiff has now had a full opportunity, through briefing, oral arguments, and supplemental briefing, to demonstrate the existence of genuine issues of material fact. The Court has carefully considered all of the parties' submissions. For the reasons set forth above, the Court finds that plaintiff has failed to carry his burden in response to defendants' motion for summary judgment. With respect to at least one essential element of each theory of each claim against each defendant, the evidence adduced by plaintiff simply and decidedly falls short. Accordingly, defendants' motion for summary judgment must be granted, in its entirety. A judgment order consistent with this opinion shall issue forthwith.

Dated: April 20, 2005                     /s/   David W. McKeague
                                          HON. DAVID W. McKEAGUE
                                          UNITED STATES DISTRICT JUDGE